IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

MATTHEW MICHANOWICZ

Magistrate No. 20-1209

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin Kauffman, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with The Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") and have been so employed since 2001. I have received training at the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training at the Federal Law Enforcement Training Center. As a Special Agent with the ATF, I have experience and am responsible for investigating violations of federal arson and explosive laws including Title 26, United States Code, Section 5861(d), which states it is unlawful for any person to receive or possess a firearm, which is not registered to him in the National Firearms Registration and Transfer Record. I know that a firearm as defined in Title 26 United States Code, Chapter 53, Section 5845(a) includes a "destructive device." I also know that Title 26 United States Code, Chapter 53, Section 5845(f) includes within its definition "(1) any explosive, incendiary, or poison gas bomb" and "(3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

2.     I submit this affidavit in support of a Criminal Complaint charging Matthew MICHANOWICZ with wrongfully possessing a destructive device in violation of Title 26, United

States Code, Chapter 53, Section 5861(d). Title 26, United States Code, Chapter 53, Section 5861(d) states it is unlawful for any person to receive or possess a firearm, which is not registered to him in the National Firearms Registration and Transfer Record.

3.      The statements contained herein are based in part on information provided by law enforcement personnel and individuals with expert knowledge of the alleged violations being investigated. I have set forth only the facts necessary to establish probable cause to believe that MICHANOWICZ wrongfully possessed a destructive device in violation of Title 26, United States Code, Chapter 53, Section 5861(d).

4.      On June 01, 2020, at approximately 0800 hours, a bag containing three devices exhibiting characteristics of incendiary devices was inspected by the Pittsburgh Bureau of Police (PBP). PBP had been called to the open area of 2 PNC Plaza facing Wood Street in downtown Pittsburgh to respond to a report of a suspicious bag. PBP officers arrived and were directed by PNC security to a "military, green backpack" located on PNC property by a bicycle rack under some small trees. PBP reported they discovered canisters in the bag (*see* photograph of bag below) and a "foul odor", so they requested the Pittsburgh Bureau of Police Bomb Squad (PBPBS) respond to the scene. The PBPBS responded to the scene, took custody of the bag, and examined the contents. The contents revealed three suspected "homemade Molotov cocktails", as identified by PBPBS. The devices are described as "spent OC vapor grenades" (identified by the PBPBS as spent devices they had previously deployed) which contained a fluid that had a smell similar to an ignitable liquid. The liquid was leaking out of one or more of the devices. All three devices had wicks attached to them, which were held in place by what appears to be "spray foam insulation" (*see* photograph of devices below). A sample of one of the wicks was tested by the PBPBS, and after touching a flame to it, it quickly ignited and burned through its length. On June 04, 2020,

PBP Arson Supervisor Thomas Heurbin submitted this evidence to the Allegheny County Crime

Laboratory for examination and the final results are pending.





5.      PNC security also informed PBP that they had security footage of someone possessing the subject bag at the scene where it was recovered and provided that footage to the PBP Intel section. PBP Officer Terry Pryor was the officer who identified MICHANOWICZ and detained him. Officer Pryor works an off-duty detail at PNC and had been provided a "unique description" of the individual on video by the PNC security personnel. Officer Pryor stated to your Affiant that the description was of an older man, approximately 6'-6'1" who rides a blue bicycle with a bright red pouch on the handlebars.  Officer Pryor stated that when he was on patrol the evening of June 03, 2020, at approximately 08:30 pm, while returning from another call and passing PNC on Wood Street he saw a man with a bicycle who matched the description sitting on the retaining wall in front of 2 PNC Plaza. Officer Pryor noted that this was the exact location where the bag with the devices had been discovered on June 01, 2020. Officer Pryor stated he approached the individual to identify him, and MICHANOWICZ provided only his last name. Officer Pryor stated that after he identified MICHANOWICZ, he released him, but MICHANOWICZ stayed in the immediate vicinity.  Officer Pryor stated he called a PBP supervisor to report that he had stopped someone matching the description, and another PBP supervisor then directed Officer Pryor to detain MICHANOWICZ and bring him to PBP Headquarters for questioning.

6.      On June 03, 2020, at approximately 08:30 pm MICHANOWICZ was located by PBP, detained and taken to the PBP headquarters for questioning.  PBP Detective Michael Burns and your Affiant conducted an interview of MICHANOWICZ at PBP headquarters. The interview was recorded with video and audio per PBP policy. At the beginning of the interview, Det. Burns read MICHANOWICZ the PBP Miranda Rights Waiver form in the presence of your Affiant. MICHANOWICZ verbally agreed to speak to the investigators and answer questions.

7.      MICHANOWICZ provided his identifiers to the investigators, including his address of 144 Republic Street, which is located on Mt. Washington in Pittsburgh, PA. MICHANOWICZ'S address has been confirmed by querying the Allegheny County Real Estate Assessment Portal. MICHANOWICZ stated he frequently rides his bicycle to Pittsburgh, including the Southside area, and had done so on May 31, 2020. MICHANOWICZ stated that on May 31, 2020, he took the "Incline" down from his residence on Mt. Washington and rode his bike to Pittsburgh to look at the "aftermath" of the riots and protests. Investigators asked MICHANOWICZ if he possessed a backpack on May 31, 2020, which is when MICHANOWICZ is seen on the surveillance video in possession of the bag while on his bicycle. MICHANOWICZ stated that he did not have a camouflage backpack or other bag with him that day. Investigators then showed MICHANOWICZ screenshot photographs taken from the surveillance footage depicting someone arriving by bicycle with a backpack at the scene where the backpack was recovered by PBP. MICHANOWICZ positively identified himself as the individual depicted in the photographs but denied he ever possessed a backpack. MICHANOWICZ also identified the bicycle in the photographs as his. MICHANOWICZ is seen in the surveillance video arriving at the bike rack on his bicycle, dismounting on the left side, removing the bag from the right side of his handlebars and carries the bag to the right of the screen and deposits it on the brick barrier under the trees.

8.      Investigators verbally described to MICHANOWICZ the devices and that were recovered from the backpack and also showed him a photograph of them. Investigators explained to MICHANOWICZ the nature of the devices pictured and that the devices were suspected to be destructive devices. Investigators asked MICHANOWICZ if he ever possessed those devices or any incendiary devices on May 31, 2020, or at any other time. MICHANOWICZ stated he never

possessed the bag in question so he could never have possessed any of its contents, and did not have any knowledge of what was in the bag. MICHANOWICZ also stated he never possessed any destructive devices, including the devices recovered from the bag.

9.        At the end of the interview, MICHANOWICZ was shown the actual video footage described above and again positively identified himself as the individual in the video. MICHANOWICZ stated again that he never possessed a backpack or other bag, or ever had any knowledge or possession of any destructive devices. MICHANOWICZ disputed the presence of the bag in question that was pointed out on the video and photographs to him by investigators. MICHANOWICZ stated he did possess a bag at that time he was at that bike rack, but it was a paper bag, which he discovered by the bicycle rack, which he presumed was trash and proceeded to pick up, carry across the street and deposit in a trashcan. This activity is not depicted on video footage reviewed by investigators.

10.       Your Affiant knows through training, knowledge and experience that improvised explosive devices (IEDs) are a sub-category of destructive devices and can take many forms. These devices can be constructed as homemade weapons and often consist of an explosive filler placed inside of a confinement container. Your Affiant knows that IEDs or other destructive devices typically contain components that are assembled into an explosive 'train'. This routinely involves a container that is capable of holding a quantity of explosive, and an initiating system. Explosives are classified as low explosives or high explosives. The classification is based upon the blast velocity of the explosives. Explosives with less than a 3000 feet per second blast velocity, such as black or smokeless powder, are considered low explosives. Explosives such as dynamite, TNT, C-4, or other explosives used in commercial or military applications, have a blast velocity of greater than 3000 feet per second and are considered high explosives. Your Affiant knows that when

placed into confinement and initiated, low explosives can create an explosion with a blast velocity commensurate with high explosives. It is also possible to make homemade explosive materials that are considered high explosives.

11.     Your Affiant knows that IEDs can be initiated with a non-electrical initiation system such as a fuse or wick. IEDs can also be initiated with an electric system, which includes a power source such as a battery and a switch that can be activated remotely or on the IED itself.

12.     Your Affiant knows that pipes and tubes can be used as confinement containers for IEDs. Other containers might be used, as long as the container provides confinement needed for low explosives to detonate.

13.     Once the device is initiated, a rapid chemical reaction creating combustion gases causes the expansion of the container and a nearly instantaneous explosion. The container, which can be made of metal, plastic, or some other hard material can fragment into pieces that are propelled at a high rate of speed and can seriously injure or kill people. In addition, materials called shrapnel, can be added to the IED by the manufacturer with the intent of creating high velocity projectiles to cause damage to persons or property. These materials can includes items such as nails, screws, nuts, bolts, BB's, and other items made of hard material that can become projectiles in an explosion.

14.     Your Affiant knows that it is unlawful for an individual to manufacture, possess, or transfer a Destructive Device without first being registered in ATF's National Firearms Transfer Record (NFA) registry and without serial numbers being issued for said NFA Weapons (i.e.; Destructive Devices).

15.     Your Affiant caused an NFA inquiry to be made on June 04, 2020, and there was no such registration for a Matthew MICHANOWICZ of Pittsburgh, PA, based on his name, date

of birth and social security number, hence, any possession of Destructive Devices by MICHANOWICZ would be in violation of 26 U.S.C., Chapter 53, Section 5861(d).

16.     On June 04, 2020, ATF Agents from the Pittsburgh Field Office executed a federal search warrant issued by United States Magistrate Judge Maureen P. Kelly at MICHANOWICZ'S residence of 144 Republic Street, Pittsburgh, PA 15211.  The warrant was issued to search for additional evidence of the unlawful possession of destructive devices.  The search conducted by Agents revealed, all in close proximity to each other on a workbench in the garage, a bundle of fuse exhibiting the same color and characteristics of the fuses found on the previously seized destructive devices, some partially burnt fuse remnants that appear to be from the same fuse bundle, a can of spray foam insulation consistent with the type of spray foam insulation that had been applied to the exterior of all three recovered destructive devices, and a syringe emitting a strong odor consistent with an ignitable liquid.  Also found in the garage were approximately 10 camouflage backpacks that were similar in size, pattern and configuration to the bag in which the destructive devices were discovered.  A search of the trashcan in the garage revealed retail packaging of fuses and a pair of used latex gloves that emitted a strong odor consistent with an ignitable liquid.

17.     PBP Accelerant Detection K9 Dodger was asked to conduct a sniff of the syringe and the latex gloves that were collected by ATF Agents. These items were placed in the back yard of the structure, where K9 Dodger conducted a loose and directed sniff of the items and alerted on each of the exhibits.

18.     Pittsburgh Bureau of Police Bomb Technicians Sergeant Robert Digiacomo and Officer Shawn Landy examined the destructive devices and determined, based on their training and experience, that these devices would have functioned as an explosive device and would have

caused damage to property or people in the area where they would have been set off. The PBPBS rendered the devices safe by detonating them with explosives. After the detonation at least one canister continued to burn and would not go out, burning for an additional four to five minutes before it was necessary to extinguish it by smothering it with sand. ATF Certified Fire Investigator Matt Regentin assessed that the continued burning is consistent with there being an added fuel load to the device, such as an ignitable liquid.

19.     WHEREFORE, based upon all of the foregoing information, I have probable cause to believe that on or about May 31, 2020, Matthew MICHANOWICZ knowingly and unlawfully, did possess a firearm, as defined by Title 26, United States Code, Section 5845(a)(8) to wit, a destructive device, which was not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Chapter 53, Section 5861(d).

Respectfully submitted,

*s/ Kevin Kauffman*
Kevin Kauffman
Special Agent
Bureau of Alcohol, Tobacco and Firearms

The Affiant attested to this Affidavit
By telephone pursuant to FRCP 4.1(b)(2)(A)
This 5th day of June, 2020.

_____
MAUREEN P. KELLY
United States Magistrate Judge